Okay, Mr. Ashley, you may proceed. May it please the Court, Michael A. Moore appeals from the District Court's March 28, 2012 order, finding him in contempt. Mr. Moore was held in contempt based upon his conduct as counsel for Dean Kattler. Mr. Kattler was the defendant in the underlying case. The underlying case involved a suit by Waste Management over Mr. Kattler's departure from Waste Management and his subsequent employment with Emerald Services, Inc., which was also a client of Mr. Moore's. The underlying case, actually the contempt award, found Mr. Kattler in contempt and found Mr. Moore jointly and severally liable with him for the contempt and for the fee award, the $65,000 fee award that the Court subsequently imposed. Mr. Kattler subsequently paid the fee award in full in July of 2013. The underlying case settled in December of 2013, and we believe, all indications are that that included a release of the claims, any claims that Waste Management had against Mr. Moore, which is the basis for our motion to dismiss, which is being carried with the case. The two points that Mr. Moore raises on the appeal are the lack of notice, adequate notice— I'm sorry, you moved to dismiss the appeal? What did you move to dismiss that's being carried with the case? We moved for the dismissal of Waste Management as a party to the appeal, Your Honor, on the continuing justiciable interest. But you obviously are wanting to continue your appeal? Yes, we obviously did, Your Honor. The basic points we're making are there was a lack of notice and further that there is, on the record as it exists now, there was no basis for the contempt finding in the first place against Mr. Moore, nor is there any basis for further contempt proceedings in the district court. With respect to notice— Mr. Ashton, it strikes me you have a very strong argument on that point. I wonder what relief you really seek from us if you're asking us to send it back to the district court? Well, Your Honor, my point, and really the second point we've argued in the brief, is that— The argument with regard to notice, et cetera, with me resonates very strongly, but if whatever that's worth, but then there's the suggestion that apart from the notice, if in fact after a due process type of adequate notice, et cetera, the same conduct were examined that it could sustain an ultimate contempt finding. I'm very interested in what—is that so? Is there anything in that matter or not? Let me address that. If we agree with you with regard to that process, do we simply reverse that right or do we send it back? All right. Let me address that then, Your Honor. The situation was that there were actually two contempt proceedings that occurred in the district court. First, Waste Management filed on January 8th of 2013 a motion for an order of show cause. A show cause order was issued and then there was a hearing held on January 22nd before the district court. At that hearing, there was forensic evidence produced, specific forensic evidence produced for the first time that strongly suggested that Mr. Cattler had on August 28, 2012, downloaded a large volume of Waste Management documents using a very specific— Let's set that—let's set the San Cruz disk aside. What about the iPad? Well, the iPad—once they concluded the hearing, the January 22 hearing, and then the district court enters its order on January 23, that does not make any specific additional directions. The order does generally admonish the—both sides to comply with the existing orders. So with respect to the iPad, you had the December 18 order that was issued after the temporary injunction hearing. And that order—they argued at the hearing over whether that order applied to the iPad or not. And it's clear that the record is clear that the district court at the January 22 hearing determined that it did. And so the image of the iPad was specifically then ordered to be produced, and it was produced two days later. On January 25 of 2013, the image of the iPad was delivered to Waste Management, and Waste Management had no complaint about that in their second motion for contempt, which was filed on February 14 of 2013. There was confusion, and the record is confusing, over whether there was—whether Cattler's attorneys, Mr. Moore and the Byrne-Maynard lawyers, were supposed to physically produce the iPad itself. If you look at the context of that discussion in the transcript, the January 22 transcript, Ms. Williamson begins to complain that they haven't received the images of the iPad. Mr. Moore, as he responded, he does—and he says inadvertently in his declaration—used the word device instead of image of the device. And so the district court then says—Mr. Moore says that he—if the device itself was supposed to be produced, as opposed to the image, then we didn't understand that. And the court then says, I think that's what my order said, referring to the December 18 order. It's clear that the court's mistaken about that. The December 18 order did not order the device itself. It ordered the image of the device. And so the concern—the concern that the Byrne-Maynard lawyers and Mr. Moore had about producing the image of the—both the image of the device and the device itself was that that device had been used by Mr. Cattler and Mr. Moore to communicate. And so there was concern that there were privileged communications on— But it was clear after the January 22 hearing that the district court thought, rightly or wrongly, that by that hearing the district court said turn over the physical iPad. The district court thought that. But he said on the bench, turn it over. Well, actually, it's a little—if it's an order, it's an order that Moore—in response to Moore's suggestion, he says, if that's what you want, we'll produce it. And the district court said that's what he wants. So the—but then what happens is they produce the image. Waste management accepts the image. And in their—in actually their response and the second motion to—for contempt, they acknowledge that they accepted that as sufficient. And—but then when they examined the iPad, its image, they didn't find the emails on the image that they were looking for. So they then—their forensic expert then says—and this is Mr. Kirsch, and this is documented in his testimony in the March 5 hearing—says, well, we can—there's now a procedure available that would allow us to search into the recessed memory of the iPad and capture emails there that nobody—no user or nobody else who didn't have the ability to hack into this recessed memory would be able to capture. And so that then creates the controversy at the March 4 and 5 hearing. What the judge—the district judge ends up doing is allowing Mr. Kirsch to conduct—he enters the March—a March 5 order that actually we didn't refer to in the brief, but there's a specific order that the district court entered March 5 at the hearing that provides a procedure where Mr. Kirsch is going to do this jailbreak search. And if there are any privileged—potentially privileged communications, then those are going to be—they're going to give the Byrne Maynard lawyers, who were representing Kattler Solely at that time, the opportunity to claim privilege on those, and then the court will rule on it. And if you look, it's pages 66 through 100 of the March 4 transcript. There's this long discussion where the district court finally—he seems confused at first, but then he understands that there—and he accepts the concern about privilege. That is the reason that the Byrne Maynard lawyers and Mr. Moore had resisted turning over the iPad image in the first place and were resisting turning over the iPad itself. The other point, and a critical point, is that Mr. Moore, because of the conflict system situation that developed with respect to the SanDisk Cruiser, on January 24, 2012, he meets with Mr. Kattler, and there's a conflict situation that develops because Mr. Moore is representing both Emerald and Mr. Kattler. He consults with a professional responsibility expert who also has given a declaration, and these declarations, of course, were sealed because there is attorney-client communications in there. And so they determine that Mr. Moore needs to withdraw, which he does formally on the 25th of February, but—and this is documented and detailed in Mr. Moore's declaration—he's conflicted in his representation from the 24th to the 28th. He withdraws from the representation or ceases providing legal advice to Mr. Kattler on the 28th. He gets the Byrne Maynard lawyers involved, and they agree to continue the representation on the 29th. So it wasn't Mr. Moore's decision as to whether to turn over the iPad itself or not. Once waste management begins complaining about that, they're complaining to the Byrne Maynard lawyers, and Mr. Moore does not participate in the decision on whether to turn over the iPad itself or not. And as I say, what the district judge ultimately does is he holds Mr. Moore in contempt for failing to turn over the iPad, but then validates the conduct of the Byrne Maynard lawyers who raised the privilege problem at the hearing, and the judge accepts those arguments. So for those reasons, we think the notice issue requires reversal, because there clearly was no notice from the district court. But the record, as supplemented with the materials we provided in our motion to vacate the contempt finding, shows that there's no basis for the contempt finding that was made and no basis for further proceedings. And so the situation, in our view, is the same, essentially, as it was in the Ibarra case that we decided, where the underlying case had settled and the rendition was the judgment, not the remand. Thank you, sir. Ms. Williamson? May it please the Court? Mr. Ashley wasn't present during all of the hearings that led to the court's contempt order. I was personally involved with every one of them, every one of the motions. Addressing first the issue of whether I, on behalf of Waste Management, should be here. Unless you're going to go outside the record, that shouldn't matter. Thank you, Your Honor. Addressing first the issue of whether Waste Management should be here. The Fleming case. Well, you're here. I'm sorry? You're here. I am here, Your Honor. I mean, that's about all you wanted to do, is make the argument. It's not the monetary issues that I'm here about. It's to protect the integrity of the court. Vengeance is mine, says Waste Management. Your Honor, this case started off in December of 2012. Or 2011, excuse me. No, December 2012. We went to the court and informed the court and Mr. Catler's attorneys, and his lead attorney, who was doing the speaking and talking to the court and conversing with us, was Mr. Moore. When they told the court that they had one Western digital hard drive, a We have more. We know there's more out there. Where do I find that in the record? You're going to find it during the December 6, 2012 hearing. That's where you're going to find it. I mean, what you're saying then, it seems to me, is that you've got to get through notice. If there's no notice here, you're asking for a remand. Is that what you're doing? You've got to get past that. Because it did seem to me that nobody even thought that Moore was involved in this so much as the plaintiff himself. Your Honor, in our January 8 motion to show cause, repeatedly we stated that it was Mr. Catler and his attorneys who had engaged in contact. Those pleadings are not sufficient notice. We have set out, for good reason, the bright, clear rules about what jumps they got to make in order to cite a lawyer for contempt. And those just weren't complied with here. And your pleadings don't get it. There's no notice given. The notice is missing conspicuously. When you do get notice, you give it precisely to the individual defendant himself and not to this lawyer. Your Honor, in the Fifth Circuit's case in American Airlines, the court stated that you looked at the allegations within the motion in order to establish what needed to be responded to for the contempt hearing. Well, let's assume for the moment that we found that there's inadequate notice given. What precisely did this lawyer himself do, as distinguished from his client, that sustains this contempt hearing? His client testified that he had given the iPad, starting with the iPad, to the attorneys at the beginning of December of 2012. In the December 20th order of Judge Hoyt, he orders them to produce within two days of that order an image or the original of the devices that Mr. Cattler used from July 1st of 2012 that were not provided to him by Emerald, his current employer. When we filed the motion to show cause on January 8th, we attached the correspondence with Mr. Moore, where we repeatedly remind him and ask him to comply with that court's order. Mr. Moore continues to take the position that it is an Emerald device, even though that device was provided to Mr. Cattler by Waste Management. We then, for that reason and other reasons, have the show cause hearing in January 2013. But the iPad was produced. After two court orders were violated, and by months, Your Honor, by months, the December 20th said an original or a copy within two days. We got neither within two days. We didn't get anything until the end of January, which was an image, and that was after Judge Hoyt ordered them to produce the original. We were exhausted by that point, dealing with them, because we had been, and it's reflected in Judge Hoyt's order, the runaround on a cell phone, the thumb drives, and the iPad. And if you read the correspondence between counsel that is attached to these motions, it's between Mr. Moore and my office, or me, where they will not give us a direct answer. So we take the image, which they know doesn't provide us with emails. And they know that because they had a forensic expert look at it before we got it. And so they finally give us the image, but Apple's, the way that Apple has its technology set up, you have to what's called a jailbreak to get behind that. When was the last correspondence with Moore about the iPad? I believe it was in January or early February of 2013, Your Honor. Why is it in the record? It's in the record, Your Honor. I understand, but where? I mean, is it exhibit to the hearings? Yes, Your Honor. It's exhibits to our motions to show cause and a motion for reconsideration. And in addition, our motions, each of those motions were also motions to compel. Mr. Moore had custody and control of that iPad. And Mr. Moore made the decision not to produce it. The orders are very clear. There's nothing ambiguous about those orders. And he, when he told the court in January, on the January 20th hearing, that, oh, if I was mistaken, if I misconstrued your order under oath, I apologize and I will happily give that to them, you know, the next day. Well, a few days later, we get an image, but we don't get the original. At that point, we didn't know that an image was no good. Usually, an image of an electronic device is good enough. And then once we realized that we had to have the device itself, we went back and said, Judge Hoyt ordered you to give us the device. Now, give it to us. And Mr. Moore was still counsel for Mr. Cattler at that point. But you initially accepted the images as being sufficient in compliance with the order. I'm sorry, Your Honor? You initially, I thought, accepted the images that you got as compliance with the order because you thought they were going to give you what you wanted. And then they didn't give you what you wanted, and then you came back. We didn't necessarily believe it was in compliance with the order, but if it would give us what we needed, we weren't going to go back and pester Judge Hoyt on something that didn't matter. If the image was the same as the original, we weren't going to go back to Judge Hoyt and complain. But once we realized that the image was not the same as the original, we said, okay, Judge According to Judge Hoyt's December 20th order. Well, did you go back to the lawyer and say, wait, but these images are not going to show us the e-mails, and then we want the iPad? Yes, Your Honor. And Mr. Moore was copied on all of those e-mails. He was copied on all of the pleadings, all of the motions. He was on all of them. Whether he weighed in later on or not, he was on all of them. When did y'all realize he was no longer representing, when did the context switch from Moore to Baron Maynard? When did we cease communicating with Mr. Moore? Yes, on behalf of the defendant individually. After he moved to withdraw on February 25th. So, did he respond to anything in the meantime on behalf of . . . I believe that he did respond to a few e-mails, but he was leaving it to Baron Maynard and Parsons. Of course, we're not aware of the gymnastics that's going on behind the scenes with the lawyers. They're all still representing Mr. Cattler, and Mr. Moore was the one who told Judge Hoyt, we'll happily produce the device tomorrow. If I misconstrued your order under oath, I'm very sorry. And so, he's in all of these e-mails, copied on all these e-mails. He's copied on the petition. There may be a few times that he's responded. We noticed that we're getting more . . . Well, Your Honor, he's getting the e-mails from us saying it's incomplete. We need the original. And that original was in Seattle at that point where Mr. Moore is located. At some point, Seattle ships it to Houston to the Baron Maynard lawyers unbeknownst to us. I'm losing the thread here. I thought you said the iPad was turned over to the lawyers in December. It was turned over to the lawyers in December, and they gave it to a forensics expert in Seattle. So, they were the ones who gave it to that forensics expert in Seattle, and she held it, but they had custody and control as evidenced by when they wanted it shipped to Houston without consulting with us, and that's in the record. Without consulting with us, she shipped it to Houston to Baron Maynard and Parsons. And so, they had custody and control over that iPad the whole time, and we couldn't get them to comply. Baron Maynard wasn't held in contempt for withholding the iPad. You're right, Your Honor, but Judge Hoyt does mention in his order that the attorneys, plural, failed to comply with his orders, but it was Mr. Moore who was standing before Judge Hoyt, and as I said to Judge Hoyt at one point, he looked you straight in the eyes. He looked you straight in the eyes and said, there is no thumb drive out there. Well, forget the thumb drive. I mean, I'm trying to separate that from the iPad for the moment. Why is it that Mr. Moore should be in contempt and not Baron Maynard over the iPad? Mr. Moore was the one making the representations to Judge Hoyt. For example, when he made the representation, we thought it was an Emerald device. There's no way it could be an Emerald device. It had waste management sticker on it when they finally produced it. Mr. Moore had seen the device. Mr. Moore knew that it was a device. But you got everything you needed and that you weren't happy with. It took you too much trouble to do it, and the result of this is this lawyer, what was the contempt award up to, $75,000 or $80,000? $65,000 plus. Plus. Plus it took you up to $70,000-something, as I recall, and a lawyer who had withdrawn from the litigation. Where notices were sent. You know, if you thought he was the real culprit, you sure didn't give the notices that were formally filed. It strikes me as an extraordinary outcome of what I regard as a standard discovery fight that goes on in litigation. And it struck me that the lawyer was, first of all, you only talk about that drive a lot, but the lawyer made the representation that his client made. And then when the client backed off of that, the forensics came in, and then the lawyer withdrew. So I'm not clear what's going on here other than what's the point of all this. Your Honor, that had to do with the thumb drive. Mr. Moore had control over that iPad the whole time. He was the one who refused to produce the image in response to Judge Hoyt's December 20th order. He's the one who refused to produce the iPad itself after the January 20th hearing. So it was Mr. Moore who was in control. That iPad was in Seattle. It wasn't in Houston, in Burma, or in Parsons. When you read, and I'm sure you've already read some of the documents. Well, if you'd gotten the iPad there, you wouldn't have gotten the stuff anyway because the images didn't disclose it, unless you used an application that you didn't get until much later. So, I mean, in other words, they gave you the images, and at that point there's nothing to suggest that no one thought that that wouldn't be an accurate reflection of what's there or that you could go further with it. Yes, Your Honor, there is because when they gave us the image, they weren't panicking about the attorney-client communications. It was only when we went back to them and said, by the way, we aren't getting anything. Actually, what was on there were some e-mails between a landscaper and people that we'd never heard of and some pictures, and that's the only thing we could get. So when we go back and we say, wait a minute, Apple's technology is such that we're going to have to do this procedure called jailbreak, that's when they panicked. They tried to start getting all this discovery because they said, we need to know what he took, and Judge Hoyt kept saying, Mr. Cattler knows what he used to take the data. He doesn't need discovery to tell him what he took. And so with this flurry of them trying to get discovery, and that's when they seek clarification not of Judge Hoyt's order with respect to producing the device, but with respect to discovery. They never sought clarification or modification or a stay on any of his orders, never. And so they're claiming, well, attorney-client privilege. Well, if that were really what was driving them from the get-go, they could have moved for clarification, modification. The only time they raised the attorney-client privilege issue before . . . Well, if they give the op-ed, they don't think that you can look at it. The lawyers, there's going to be no communication that the images are not there. Then when you tell them, no, there is a technology for going behind that in financing, well, if you're going to get that, then we need to know about attorney-client privilege. What's untoward about that? You're suggesting that the lawyer was participating in the actual destruction of evidence, if I read what you're saying. I, Your Honor, am not suggesting. I am saying that Mr. Moore was part and parcel of the refusal to comply with Judge Hoyt's orders. We were communicating with Mr. Moore about getting the image pursuant to the December 20th order, and Mr. Moore, even though he had custody and control of that op-ed, wouldn't provide it. He kept calling it an emerald device when it clearly wasn't. How long lapsed before you got the op-ed after that point? How much time lapsed? We didn't get the op-ed until March 5th. And that was from March 5th? When was this refusal to produce the op-ed initially? The judge ordered them to physically produce the op-ed on January 20th. And you got it in March? March 5th, after much effort. And that was during the hearing. On March 4th, we're at the hearing. Judge Hoyt is understandably exasperated, upset. And . . . Does the judge's order say op-ed? It describes . . . well, his order on January 20th from the bench says the op-ed. Produce them the op-ed. You should have already given it to them. Give it to them. Mr. Moore agrees and says, misconstrued, under oath. I'll happily give it to them tomorrow. It's an oral statement from the judge. We found it in a transcript or did he enter a written order? It's in the transcript, Your Honor, and then he follows it up with a written order that says that the parties will comply with his orders that are issued from the bench or as written. And as written, I guess. And so he follows up on a written order that solidifies his order from the bench. And Mr. Moore agrees. He's going to do it. And so our motions . . . And Judge Hoyt, during that January 20th hearing, tells Mr. Moore and Mr. Cattler, this is not a slap on the hand if you guys are hiding evidence and not complying with my orders. This is like jail incarceration sort of stuff. So you need to kind of get with the program and comply with my orders. Each hearing, Judge Hoyt is warning Mr. Moore and Mr. Cattler, but Mr. Moore and Mr. Cattler, not the Bermanor lawyers who are sitting at the table. Mr. Moore is up there talking to Judge Hoyt and telling him what he misunderstood or what he was going to do and what he didn't do. And Judge Hoyt says, during the March 4th hearing with Mr. Moore who was present in the courtroom, Mr. Moore was present. He says to the Bermanor lawyers, you aren't the lawyers that have been making these misrepresentations to me. And he says, you know, basically it's the one back there. And I make the point that Mr. Moore is back there. And Mr. Moore had looked Judge Hoyt in the eyes and made representations to him that were not true. And so Mr. Moore is there. And he says he's there as a fact witness. I don't know what he could testify to that wouldn't be attorney-client communications or privileged. He was there because he knew that this was going to be a contempt proceeding that involved him. And he was on notice with all of the pleadings. The cases that were cited by Mr. Moore's attorneys are cases dealing with criminal contempt. For example, someone who showed up for jury duty, came back to work. Their employer demoted them. The juror goes to the judge, tells the judge. The judge has the employer arrested and taken into court. They have a hearing, and he's thrown in jail. Obviously, that employer had absolutely no notice. Mr. Moore's an attorney. He had plenty of notice from not only us but the court as to what we were seeking and who we were holding accountable. And Judge Hoyt repeatedly warned Mr. Moore, directly Mr. Moore, in addition to Mr. Cattler, you need to comply with my orders.  There was a complete lack of respect shown to Judge Hoyt in this proceeding. Ms. Williamson, we have your argument, and thank you very much. Mr. Ashley, you have some time for rebuttal. Thank you, Your Honor. It's important to understand that there were really two things going on with respect to the orders that were entered in December of 2012. Waste management was concerned that their documents had been downloaded and taken by Mr. Cattler when he left and going over to a competitor, Emerald. So there were searches done of the devices, or the idea was to have searches done of the devices to determine what waste management data or documents were stored on any of the devices that Mr. Cattler had used during this time period. Then there was a separate, and so there were these procedures put in place to have searches done by a forensic neutral of devices that might contain or have stored on them not only waste management documents that Mr. Cattler had downloaded, but Emerald documents that were confidential information or trade secret information of Emerald that might be on there. So the procedures were designed to allow the search to capture what waste management documents were there and to protect from waste management any Emerald documents. And so that was the confidentiality procedure, and there were attorneys' eyes only ordered entered to protect those types of documents. The other category, and this is the subject that really occupied most of the December 18 hearing. If you read the transcript itself, as opposed to the orders that came out later, the concern there was that there were attorney-client communications on the computer that Mr. Cattler had used once he transferred to Emerald. And the procedure that was crafted, that Ms. Williamson agreed to at the December 18 hearing, was to allow the neutral, using search terms, to search those devices and then to have Cattler's lawyers, Mr. Moore and the Byrne Maynard lawyers, examine and make privilege claims as to those documents. And so that actually gets somewhat confused, and it got confused at the January 22 hearing. It ultimately gets straightened out at the March 5 hearing. But Judge Hoyt is very, the district court is very consistent in his rulings once he understands there is a privilege issue involved, and that's what happened at the March 5 hearing with respect to the iPad. Now, again, Mr. Moore, after the January 24 meeting, he determined in consultation with a professional responsibility professor that he needed to withdraw. It's documented in detail that he did so on January 28. He didn't withdraw. He stopped representing. But from the court's perspective and Waste Management's perspective, he was still counsel of record. He was, and I understand that. But in terms of what Mr. Moore actually did as far as providing legal advice to Cattler, he didn't have any involvement in the decision. When the Waste Management people were asking for the iPad, saying the image isn't sufficient, why didn't Moore say, I'm no longer part of this? I mean, Moore just sat back and did nothing. He's copied on those e-mails, but the correspondence is between and the exchange is between the Byrne Maynard lawyers because Mr. Moore at this point can't interfere with what decisions the Byrne Maynard lawyers are making on Mr. Cattler's behalf. And the other point I need to make or reinforce really is that the iPad image, there was no problem with the iPad image that was provided. The problem was that unless and until you could get into this recessed memory, then there was no issue as to whether there were privileged communications. One quick question. What was found in the recessed memory of the iPad as far as the downloaded materials, or was it the case that all the downloaded materials went through this thumb drive? As I understand it, there's a thumb drive at which you ultimately determine that perhaps the whole documents had been downloaded, et cetera, and whatever. But then there was a—understandably, on the other side, I thought that maybe that also had been used to do that—that had been downloaded. They could discover what had been downloaded through the iPad. And now I'm not clear as to what—when they actually got into the iPad, what did they find? What Ms. Williamson made clear is what they were looking for on the recessed memory were e-mails. Yes. And so what they were looking for were the e-mails between Mr. Cattler and his counsel, and then they were challenging or intended to challenge the privilege claim as to those. And this is in Mr. Perkins'— That's what I'm trying to understand. The way it's being presented is that they were after the iPad to get the downloaded instrumentation, but the thumb drive had already surfaced as a potential culprit. Right. And then at some point the client suddenly remembered whatever—I did have one, but I don't know where it is kind of thing. And that happens on January 24th when he meets with Mr. Moore. Right. So I just didn't know if the iPad—is it the case—the iPad never contained the downloaded information. It just contained e-mails. They never—they were not contending that the iPad contained that information. And as Mr. Kirsch makes clear, it's pages 318 to 326 of the record. It's at the March 5 hearing. The software was not available to do that jailbreak procedure until, he says, February of 2012. So there was nothing wrong with the iPad image. So this sudden panic that counsel obviously is arguing about is that with this discovery that they were going to try to hide it. They were never—but apparently they were never there, that this material was just— I think that's what happened. Yes. Okay, Mr. Eshel, thank you very much.